# EXHIBIT A

| AOC-105 Doc. Code: CI<br>Rev. 1-07 04/1/2016 01:31 pm<br>Page 1 of 1 Ver. 1.02<br>Commonwealth of Kentucky<br>Court of Justice www.courts.ky.gov<br>CR 4.02; CR Official Form 1 |  | Case No. 16 CI 01519<br>Court ☑ Circuit ☐ District<br>County Jefferson |
|---|---|---|
| | **CIVIL SUMMONS** | |

JEFFERSON CIRCUIT COURT
DIVISION TWO (2)

**PLAINTIFF**

WILLIAM H. WILLIAMS

APR  4  2016

**VS.**

**DEFENDANT**

BAPTIST HEALTHCARE SYSTEM, INC.

d/b/a BAPTIST HEALTH LEXINGTON

2701 Eastpoint Parkway

Louisville                    Kentucky                    40223


**Service of Process Agent for Defendant:**

Janet M. Norton

2701 Eastpoint Parkway


Louisville                                    Kentucky                    40223

### THE COMMONWEALTH OF KENTUCKY
### TO THE ABOVE-NAMED DEFENDANT(S):

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: APR 1 - 2016 , 2____

DAVID L. NICHOLSON, CLERK          Clerk

By: _____  D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

this ____ day of _____, 2____.

Served by: _____

_____Title

CASE NO **16 C I 01519**

JEFFERSON CIRCUIT COURT

JEFFDIVISION CIRCUIT COURT
DIVISION TWO (2)

JEFFERSON CIRCUIT COURT

DIVISION

WILLIAM H. WILLIAMS                                                    PLAINTIFF

v.                           **COMPLAINT**

BAPTIST HEALTHCARE SYSTEM, INC
d/b/a BAPTIST HEALTH LEXINGTON
2701 Eastpoint Parkway
Louisville, KY 40223

      Serve:   Janet M. Norton
               2701 Eastpoint Parkway
               Louisville, KY 40223                                DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

Comes now the Plaintiff, Williams H. Williams, by counsel, and for his Complaint herein states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Defendant Baptist Healthcare Systems, Inc. is a statewide hospital corporation based in Louisville, Jefferson County, Kentucky which operates a hospital facility called Baptist Hospital Lexington in Fayette County, Kentucky. Baptist Hospital Lexington has an emergency department.

2. Plaintiff William Williams is a resident of Paris, Bourbon County, Kentucky.

3. Venue is proper before this Court as Defendant Baptist Healthcare Systems is a corporation residing in Jefferson County, Kentucky, with a principle place of business in Jefferson County and its registered agent for service of process is located in Jefferson County.

4. This is an action for damages exceeding the minimum jurisdictional limits of this Court.

1

## FACTUAL ALLEGATIONS

5. On April 4, 2015 Plaintiff was transported by an EMS ambulance to Defendant's Baptiast Hospital Lexington (hereafter, "BHL") facility in Lexington, Kentucky after suffering a myocardial infarction (heart attack).

6. While in transit to BHL, EMS was in contact with personnel at BHL informing them of Plaintiff's vital signs and arranging emergency medical care.

7. Upon arrival at BHL, Plaintiff is turned away at the doors of the emergency room and denied care by the emergency department.

8. After being denied care at BHL's emergency department, Plaintiff had to be loaded back into the ambulance and transported to the University of Kentucky's Chandler Medical Center emergency room to receive treatment.

9. On April 4, 2015, BHL was staffed with nurses, doctors, employees, and other medical care professionals to provide care to persons presenting to the emergency department with emergency medical conditions.

10. BHL accepts payments from Medicaid and Medicare and must provide appropriate medical screening examinations to persons presenting with emergency medical conditions per the Emergency Medical Treatment and Active Labor Act (EMTALA).

11. A myocardial infarction is an emergency medical condition.

12. On November 23, 2015, the Centers for Medicare and Medicaid Services issued a report finding that BHL acted in violation of EMTALA by failing to provide Plaintiff any emergency medical care on April 4, 2015.

13. As a result of being denied care at BHL's emergency department, Plaintiff continued to suffer from a myocardial infarction for a longer period of time than he otherwise would have, resulting in but not limited to the following:

    a. Additional damage to his heart and vascular system, including increased dead heart muscle;

    b. Prolonged pain and suffering as he continued to endure a myocardial infarction without treatment;

    c. Severe emotional suffering and mental anguish at the prospect of not receiving medical care while enduring a life-threatening emergency medical condition; and

    d. Additional medical expenses by being transported and provided longer care by EMS.

## COUNT I- MEDICAL NEGLIGENCE

14. Paragraphs 1-13 above are incorporated herein by reference.

15. At all times relevant herein, various nurses, doctors, employees, and professional medical care providers were agents, ostensible agents, servants, or employees BHL, whose names are not known to Plaintiff at this time, and had a duty to exercise the degree of care and skill expected of reasonably competent similar medical care providers under similar circumstances.

16. At the dates and times specified above, various nurses, doctors, employees, and professional medical care providers in the employ of BHL are believed to have negligently or grossly negligently breached their duty as described above, including but not limited to the duty to provide emergency medical care to persons presenting to the emergency department with a myocardial infarction

17. The negligence or gross negligence of BHL and its various nurses, doctors, employees, and professional medical care providers resulted in injury to Plaintiff as set forth in paragraph 13.

## COUNT II- NEGLIGENCE *PER SE*

18. Paragraphs 1-17 are incorporated herein by reference thereto.

19. KRS 446.070 allows a private right of action for recovery of damages caused by violation of a Kentucky statute or regulation.[1]

20. Per 902 KAR 20:016(8), BHL owed a non-delegable duty to maintain written procedures for emergency patient care, required to evaluate patients requesting emergency and render prompt diagnosis and emergency care, and to provide adequate staffing to provide emergency care.

21. Per KRS 216B.400, BHL owed a non-delegable duty to render eminency care to any person presenting a need for emergency care regardless of a person's ability to pay for such services.

22. BHL, by and through its agents, ostensible agents, servants, and/or employees failed to comply by their acts and omissions, including one or more of the following, which are violations of 902 KAR 20:016(8) and KRS 216B.400:

   a. Failing to adopt written policies and procedures for emergency patient care;

   b. Failing to educate nurses and other staff of written policies and procedures for emergency patient care;

   c. Failing to follow written policies and procedures for emergency patient care;

   d. Failing to provide appropriate emergency treatment required by Plaintiff; and

---

[1] *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 535 (Ky. 2011).

4

     e.  Failing to provide appropriate staffing levels to provide emergency care to Plaintiff.

23. BHL's violations of 902 KAR 20:016(8) and KRS 216B.400's requirements were a substantial factor in causing the injuries to Plaintiff listed in paragraph 13.

### COUNT III- VIOLATION OF EMTALA

24. Paragraphs 1-23 are incorporated herein by reference thereto.

25. At all times relevant herein, BHL owed a duty as set forth in the Emergency Medical Treatment and Active Labor Act (EMTALA), as codified at 42 USC §1395DD.

26. BHL owed a non-delegable duty under EMTALA to provide base care and treatment in accordance with the prevailing professional standards of care for a health care provider or similar providers in light of all relevant and surrounding circumstances. EMTALA and its regulations require BHL, by and through its agents, ostensible agents, servants, and/or employees while acting within the course and scope of their employment to comply with the requirements set forth in EMTALA.

27. BHL by and through its agents, ostensible agents, servants, and/or employees failed to comply by their acts and omissions, including one or more of the following, which are violations of EMTALA:

     a.  Failure to establish and/or enforce policies and procedures addressing and assuring compliance;

     b.  Failure to provide appropriate medical treatment required by Plaintiff;

     c.  Failure to ensure that appropriate transfer of Plaintiff was completed;

     d.  Failure to provide any medical screening examination to Plaintiff;

     e.  Failure to provide necessary stabilizing to Plaintiff in the emergency department

28. BHL's violations of EMTALA requirements were a substantial factor in causing the injuries to Plaintiff listed in paragraph 13.

**WHEREFORE,** the Plaintiff, William H. Williams, demands judgment against Defendant for compensatory and punitive damages; interest; trial by jury; for costs herein expended; attorney's fees; and for any and all further relief to which the Plaintiff may appear entitled.

*As to Complaint*
*Williams v. Baptist Healthcare*

Respectfully submitted,

Hans G. Poppe
Scarlette R. Burton
Kirk A. Laughlin
Kathleen Coffey
THE POPPE LAW FIRM
Justice Plaza
8700 Westport Road
Louisville, Kentucky 40242
Phone: (502) 895-3400
Fax: (502) 895-3420
Hans@PoppeLawFirm.com
Kirk@PoppeLawFirm.com

**16 C I 01519**

CASE NO. _____

JEFFERSON CIRCUIT COURT

JEFFER~~SON CIRCUIT COURT~~ DIVISION ~~DIVISION TWO (2)~~

WILLIAM H. WILLIAMS                                    PLAINTIFF

v.               **PLAINTIFF'S FIRST SET OF INTERROGATORIES,**
                 **REQUESTS FOR PRODUCTION OF DOCUMENTS,**
                 **AND REQUESTS FOR ADMISSIONS**
                 **PROPOUNDED ON DEFENDANT**

BAPTIST HEALTHCARE SYSTEM, INC
d/b/a BAPTIST HEALTH LEXINGTON                         DEFENDANT

* * * * * * * * * * *

Comes now the Plaintiff, Williams H. Williams, by counsel, and pursuant to CR 33, 34, and 36, propounds to the Defendant Baptist Healthcare System, Inc., d/b/a Baptist Health Lexington the following First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions. Unless a shorter or longer time for compliance is ordered by the Court or by agreement of the parties, your Answers to these Interrogatories and Requests are due within forty-five (45) days of the date of service hereof.

These Interrogatories and Request for Production of Documents shall be deemed continuing and supplemental answers and production shall be required of you pursuant to CR 26.05 if you or your counsel directly or indirectly obtain further information of the nature sought herein after the time the answers are served and the documents are produced.

Each interrogatory and request is addressed to the personal knowledge of the Defendants as well as the knowledge and information of the Defendants' attorneys, investigators, agents, employees, and other representatives. When a question is directed to the Defendants, the question is also directed to the aforementioned persons.

## DEFINITIONS

You or Your:

> Refers to Baptist Healthcare System, Inc., d/b/a Baptist Health Lexington, and its employees, agents, and affiliates.

EMTALA:

> Refers to the Emergency Medical Treatment and Active Labor Act, codified in 42 USC 1995dd, *et. seq.*

Plaintiff:

> Refers to Plaintiff William H. Williams

April 4, 2015 and/or April 5, 2015:

> Based on information and belief, Plaintiff was being transported by emergency medical services to Defendant's facility between 10:00pm on April 4, 2015 to 1:00am on April 5, 2015 and all interactions detailed in the Complaint occurred during this time period.

"Interaction(s) with Plaintiff" and "Interacted":

> Refers to the communications, contacts, care, and lack of care between you and William H. William on April 4, 2015 through April 5, 2015.

CMS Report:

> Refers to the attached letter and report, dated November 23, 2015, from Sandra Pace at the Centers for Medicare and Medicaid Services to your employee, William Sisson.

## INTERROGATORIES

A.      Please identify the name and address of each person answering or assisting in answering these interrogatories.

B.      Please identify each and every person, by name and address:  (1) having discoverable information regarding this matter, or (2) whom you expect to call as a witness at trial, and please provide the specifics of each person's knowledge.

C.      Are you willing to supplement these answers if information subsequently becomes available?

1.      For the last ten (10) years, list by case number, style of case, and plaintiff's attorney every matter in which you have been a defendant in a lawsuit involving claims concerning EMTALA, 902 KAR 20:016, and/or KRS 216B.400

2.      Please state the policy limits of any and all insurance policies which may be applicable to the incident described in Plaintiffs' Complaint.

3.      Identify each and every person, by name, address, and phone number, employed by you who interacted with Plaintiff from April 4, 2015 through April 5, 2015.

4.      Please provide a summary discussing your understanding of the events occurring on April 4, 2015 through April 5, 2015 giving rise to the facts alleged in the CMS Report.

5.      Please state whether any disciplinary action was taken against any person(s) as a result of the facts alleged in the CMS Report.

6.      Please set forth any "corrective actions" made in compliance with the CMS Report.  If no such corrective actions were taken, please provide a brief summary of why no corrective actions were taken.

7.   If you contend that some third party for whose conduct you are not responsible caused or contributed to the damages and injuries complained of in the Plaintiff's Complaint, please identify in detail each such third party, specifying his or her full name, address, profession or occupation.

8.   Please state separately for each third party identified in the answer to the foregoing interrogatory, all facts in detail, and identify in detail each and every document which you believe supports your allegations with regard to each such third party.

9.   State the name, address, and telephone number of each person you expect to call as an expert witness at trial as to any matter relating to this litigation.

10.   With reference to each person listed in your answer to the preceding Interrogatory, state his or her background and qualifications as an expert.

11.   State whether or not the testimony of each person who is expected to be called as an expert witness was acquired or developed in anticipation of litigation for trial.

12.   For each expert witness expected to be called at trial, state separately:

   a.   The subject matter on which he or she is expected to testify;

   b.   The substance of the facts and opinions to which such person is expected to testify; and

   c.   A summary of the grounds for each opinion.

13.   Identify specifically, including source of publication, each and every article, portion of text and other written material prepared by each such expert relating to any matter and issue in this action, and any other written material on which you or your counsel intend to rely in this action.

14.   Identify specifically each and every action in which any such expert identified herein has testified as an expert witness, whether by deposition or in court, and state for which party in such action the expert was a witness.

## REQUESTS TO PRODUCE

1.   Please produce a complete copy of any and all insurance policy(ies) **and** declarations page(s) and/or excess and/or umbrella insurance **and** declaration page(s) which provided you coverage from April 4, 2015 through April 5, 2015.

2.   Please produce a complete copy of any medical records maintained by you concerning your interactions with Plaintiff occurring from April 4, 2015 through April 5, 2015.

3.   Please produce a complete copy of all documents and recordings concerning interactions between yourself and emergency medical transit services from April 4, 2015 through April 5, 2015, inducing but not limited to:

   a.   call logs,

   b.   notations,

   c.   medical records and charting, and

   d.   audio recordings.

4.   Please produce all time sheets, schedules, or other work-time records for all doctors, nurses, technicians, and other medical staff employed by you to work in the emergency department from March 1, 2015 through April 30, 2015.

5.   Please produce any reports or interviews completed by any person related to your interactions with Plaintiff occurring from April 4, 2015 through April 5, 2015, regardless of whether these are titled incident reports, investigations, peer review, sentinel event, root cause analysis, or by some other name.

6.  Please produce all written policies and procedures that were in effect at your facility any time during April 4, 2015- April 5, 2015 that in any way relate to Plaintiff's Complaint, including but not limited to:

    a.  treatment for patients with an emergency medical condition;

    b.  treatment for patients with myocardial infarction;

    c.  education and training of nurses and other medical staff on emergency medical treatment;

    d.  interactions with emergency medical transit personnel;

    e.  staffing numbers and staffing protocol for ensuring adequate treatment of patients presenting an emergency medical condition; and

    f.  diversion.

7.  Please produce a table(s) of contents of all written policies and procedures in effect at your facility at any time during April 4, 2015- April 5, 2015

8.  Please produce any and all attendance sheets, rosters of personnel present, or documentation which identifies employees who attended any in-service or training program regarding the following:

    a.  treatment for patients with an emergency medical condition;

    b.  treatment for patients with myocardial infarction;

    c.  education and training of nurses and other medical staff on emergency medical treatment; and

    d.  staffing numbers and staffing protocol for ensuring adequate treatment of patients presenting an emergency; and

    e.  diversion.

- 6 -

9.      Please produce a copy of any and all letters and reports to and from any government agency concerning violation of statues or regulations from January 1, 2015 through present, including but not limited to:

   a.  Office of Inspector General Reports from the Kentucky Cabinet of Health and Family Services,

   b.  Reports from the Centers for Medicare and Medicaid Services.

10.     Please produce a copy of any "Plan of Correction" made in compliance with the CMS Report. If no such document exists, please state "no such document exists."

11.     If any document is not produced based on assertion of privilege, please produce an itemized privilege log identifying each withheld document, its author, recipients, date of creation, location, subject of the document, and a specific basis for the objection to providing each document.

## REQUESTS TO ADMIT

1.      Admit a myocardial infarction is an emergency medical condition.

2.      Admit you are a hospital subject to EMTALA.

3.      Admit you are a hospital subject to 902 KAR 20:016(8) and KRS 216B.400.

4.      Admit a hospital must provide a medical screening examination to a patient presenting at the hospital with an emergency medical condition.

5.      Admit a hospital must stabilize a patient presenting at the hospital with an emergency medical condition.

6.      Admit a hospital must ensure that appropriate transfers of patients to another facility are completed for patients presenting at the hospital with an emergency medical condition who are untreated.

- 7 -

7.    Admit Plaintiff was being transported by emergency medical transportation to your emergency department on April 4-5, 2015.[1]

8.    Admit you knew Plaintiff was being transported by emergency medical transport to your emergency department on April 4-5, 2015.

9.    Admit you were contacted by an emergency medical transit service on April 4-5, 2015 and informed Plaintiff was being transported to your hospital with an emergency medical condition.

10.   Admit you told an emergency medical transit service on April 4-5, 2015 to bring Plaintiff to your emergency department to receive emergency medical treatment.

11.   Admit you refused to accept Plaintiff for treatment upon his arrival at your facility on April 4-5, 2015.

12.   Admit you did not perform a medical screening examination of Plaintiff on April 4-5, 2015.

13.   Admit you did not attempt to stabilize Plaintiff on April 4-5, 2015.

14.   Admit you did not ensure that Plaintiff received an appropriate transfer to another emergency medical facility on April 4-5, 2015.

15.   Admit you employ emergency room doctors, nurses, and other medical staff who could have assisted and cared for Plaintiff on April 4-5, 2015.

16.   Admit CMS issued a report determining you violated certain provisions of EMTALA concerning your interactions with Plaintiff on April 4-5, 2015.

17.   Admit CMS determined that the deficiencies concerning your interactions with Plaintiff on April 4-5, 2015 were "so serious that they constitute an immediate threat and jeopardy

---

[1] Based on information and belief, Plaintiff was being transported by emergency medical services to Defendant's facility between 10:00pm on April 4, 2015 through 1:00am on April 5, 2015.

to the health and safety of any individual who comes to your hospital with an emergency medical condition."

Respectfully submitted,

Hans G. Poppe
Scarlette R. Burton
Kirk A. Laughlin
Kathleen Coffey
THE POPPE LAW FIRM
Justice Plaza
8700 Westport Road
Louisville, Kentucky 40242
(502) 895-3400
(502) 895-3420 (fax)
Hans@PoppeLawFirm.com
Scarlette@PoppeLawFirm.com
Kirk@PoppeLawFirm.com
Kathleen@PoppeLawFirm.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

It is certified that a copy of Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, was served on the Defendant simultaneously with service of the Complaint and Summons herein.

Kirk A. Laughlin

Department of Health & Human Services
Centers for Medicare & Medicaid Services
61 Forsyth Street, SW, Suite 4T20
Atlanta, Georgia 30303-8909



CENTERS FOR MEDICARE & MEDICAID SERVICES
CONSORTIUM FOR QUALITY IMPROVEMENT
AND SURVEY & CERTIFICATION OPERATIONS

Reference: M:2015.Baptist.Health.Lexington.180103.CC.KY23433.11.23.2015 -204 doc.

November 23, 2015

FILE COPY

Mr. William Sisson, CEO
Baptist Healthcare Lexington
1740 Nicholasville Road
Lexington, Kentucky 40503

**RE: Baptist Healthcare Lexington**
**CMS Certification Number (CCN): 18-0103**
**EMTALA Complaint Control Number: KY23433**

Dear Mr. Sisson:

To participate in the Medicare program, a hospital must meet the requirements established under title XVIII of the Social Security Act (the Act) and the regulations established by the Secretary of Health and Human Services under the authority contained in §1861(e) of the Act. Further, §1866(b) of the Act authorizes the Secretary to terminate the provider agreement of a hospital that fails to meet these requirements.

We have reviewed the report of the July 2, **2015,** complaint survey numbered **KY23433** conducted by the Kentucky State Agency. The complaint alleged noncompliance with the requirements of 42 CFR 489.24, *Responsibilities of Medicare Participating Hospitals in Emergency Cases* and/or the related requirements of 42 CFR 489.20. We have determined that your hospital violated the requirements of 42 CFR 489.24 and/or 42 CFR 489.20 and that an Immediate Jeopardy exists based on the following:

- Failure to meet the requirements of 42 CFR 489.20;
- Failure to meet the requirements of 42 CFR 489.24;
- Failure to provide Physicians who were "on-call";
- Failure to provide a Medical Screening Examination;
- Failure to stabilize patients in the ED;
- Failed to ensure that appropriate transfers of patients were completed.

page 2
Mr. William Sisson, CEO
Baptist Health Lexington

FILE COPY

We have determined that the deficiencies are so serious that they constitute an immediate threat and jeopardy to the health and safety of any individual who comes to your hospital with an emergency medical condition. Further, under 42 CFR 489.53, a hospital that violates the provisions of 42 CFR 489.24 is subject to termination of its provider agreement. Continuation of these deficiencies could result in the termination of *Baptist Health Lexington Hospital* from the Medicare program.

This determination letter serves to notify you of the violation. The projected date on which your Medicare provider agreement will terminate is **"December 16, 2015"**. If you have not demonstrated compliance within *twenty one days from the date of this letter*, you will receive a final notice of termination letter. This final notice will be sent to you concurrently with notice to the public in accordance with regulations at 42 CFR 489.53.

You may avoid termination action and notice to the public either by providing a credible allegation or credible evidence of correction of the deficiencies, or by successfully proving that the deficiencies did not exist prior to the projected public notification date. In either case, the information must be furnished to this office so that there is time to verify the corrections. A credible allegation of correction by the hospital requires a resurvey to verify the corrections. However, when evidence of correction is provided by the hospital, this office must decide whether the evidence of correction is sufficient to halt the termination action. If the evidence is not sufficient in itself to establish that the hospital is in compliance, a resurvey is required for verification of correction.

We will rescind your termination from the Medicare program if this office verifies your corrective action or determines that you successfully refuted the findings contained in this letter by proving the allegations were in error. The criteria for a credible allegation of compliance are:

- The alleged corrective action must have removed the deficiency.
- The corrective action was of a kind that could have been accomplished between the survey and the date of the allegation.
- Changes made ensure the deficient practice does not recur.
- How the corrective action will be monitored to ensure deficient practice does not recur.

**Your written response with the Plan of Correction must be received in our office no later than ten calendar days (or sooner) from receipt of this notice or termination action will proceed as scheduled.** The Kentucky State Agency will schedule a survey to conduct a full and thorough review of your corrective actions before **December 16, 2015**. Please be advised that under Medicare, a provider is not entitled to a formal hearing before termination but only after adverse action actually takes place.

page 3
Mr. William Sisson, CEO
Baptist Health Lexington



**Appeal Rights**

If you disagree with this action imposed on your facility, you or your legal representative may request a hearing before an administrative law judge of the Department of Health and Human Services, Departmental Appeals Board (DAB). Procedures governing this process are set out in 42 C.F.R. 498.40, et seq. You must file your hearing request electronically by using the Departmental Appeals Board's Electronic Filing System (DAB E-File) at https://dab.efile.hhs.gov no later than sixty (60) days after receiving this letter. Specific instructions on how to file electronically are attached to this notice. A copy of the hearing request shall be submitted electronically to Rosemary.Wilder@cms.hhs.gov.

Requests for a hearing submitted by U.S. mail or commercial carrier are no longer accepted as of October 1, 2014, unless you do not have access to a computer or internet service. In those circumstances you may call the Civil Remedies Division to request a waiver from e-filing and provide an explanation as to why you cannot file electronically or you may mail a written request for a waiver along with your written request for a hearing. A written request for a hearing must be filed no later than sixty (60) days after receiving this letter, by mailing to the following address:

Department of Health & Human Services
Departmental Appeals Board, MS 6132
Director, Civil Remedies Division
330 Independence Avenue, S.W.
Cohen Building – Room G-644
Washington, D.C. 20201
(202) 565-9462

A request for a hearing should identify the specific issues, findings of fact and conclusions of law with which you disagree. It should also specify the basis for contending that the findings and conclusions are incorrect. At an appeal hearing, you may be represented by counsel at your own expense.

If you have any questions, please contact Rosemary Wilder at 404 562-7452 or through email at rosemary.wilder@cms.hhs.gov.

Sincerely,

Sandra M. Pace
Associate Regional Administrator


Enclosure: CMS 2567
CC: State Agency

*scanned*

## EXHIBIT 138
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

(●) 5 - Day Review          ( ) 60 - Day Review

*NOTE:  A separate Worksheet must be completed by the QIO Physician Reviewer for each student record reviewed.  To facilitate accurate completion, the CMS Regional Office (RO) will complete Section I for each medical record sent to the QIO along with the request for review.  The RO must enter each medical record with the unique patient identifier as found on the draft Form CMS-1564.*

### SECTION I

Complaint Control Number: **KY23433**          Patient *Identifier Number on Draft 1564*: **Pt. # 1**

Name of Patient: **Williams, William**          DOB: **4/3/1957**

Name of Alleged Violating Hospital and/or Physician: **Baptist Health Lexington**

City: **Lexington**          State: **KY**          CMS Certification Number: **180103**

Date and Time of Admission to Emergency Services:  **4/4/15          11:30 PM**

Date and Time of Discharge from Emergency Services: **Turned away**

Name of Receiving Hospital (if applicable): **University of Kentucky**

*Receiving Hospital Location*

City: _____ State: _____ CMS Certification Number: _____

Date and Time of Admission to Receiving Hospital (if applicable): **4/5/15          12:12 AM**

Manner of Transport: _____

Receiving Hospital Distance from Sending Hospital (if applicable and known): _____

### SECTION II

**Note to Physician Reviewer:**  Please complete the following questions to address issues related to EMTALA.  Please be sure to include your clinical rationale for your *findings*, and make any summary comments and comments on other aspects of the case in the summary section on the last page of this document.  Please keep in mind that the purpose of your comments is to provide your clinical perspective on the care rendered, for the CMS 5-day EMTALA review or for the OIG 60-day EMTALA review.

**Therefore, please refrain from making ANY statements about whether or not a violation of EMTALA has occurred, as that decision is the responsibility of CMS and the OIG only.**

(Violations of EMTALA may also constitute negligence under state malpractice law.  *However, determining negligence is not part of and should not be mentioned in your EMTALA review.*)

**EXHIBIT 138**
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

<u>MEDICAL SCREENING EXAMINATION</u>

**Note to Physician Reviewer:** Depending upon an individual's presenting symptoms, an appropriate medical screening examination can range from a simple process involving only a brief history and physical examination to a complex process that also involves performing ancillary studies and procedures such as (but not limited to) lumbar puncture, clinical laboratory tests, CT scans and other diagnostic tests and procedures, *some of which may require the services of an on-call specialist to order, conduct or interpret.*

A hospital must provide appropriate screening services within the full capabilities of its staff and facilities, including access to specialists who are on call.

An Emergency Medical Condition is defined as **EITHER:** (1) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected to result in: placing the individual's health (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy; or serious impairment to bodily functions; or serious dysfunction of any bodily organ or part; <u>OR</u> (2) with respect to a pregnant woman who is having contractions, that there is inadequate time to effect a safe transfer to another hospital before delivery, or that the transfer may pose a threat to the health or safety of the woman or the unborn child. *(See 42 CFR 489.24(b))*

1. **Did the hospital provide a medical screening examination that was,** *within reasonable clinical confidence, sufficient to determine whether or not an EMERGENCY MEDICAL CONDITION (as defined above) existed? More specifically:*

**1a.** *Was the medical screening examination appropriate given all of* **the individual's medical complaints and signs and symptoms** *at the time the individual presented?*

○ YES          ◉ NO

Please explain your clinical rationale:

Patient transported to Baptist by EMS for STEMI. Patient did not get medical screening examination at Baptist as EMS was refused at door by Baptist personnel.

**EXHIBIT 138**
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

**EMTALA Physician Review Worksheet**

**1b.** *Was the medical screening examination appropriate given the hospital's capabilities - including* **ancillary services routinely available and consultations by on–call specialist physicians?**

◯ YES          ⦿ NO

Please explain your clinical rationale:

Patient not seen at Baptist.

**1c.** *Is there any evidence that there was an inappropriately long delay, based on the individual's clinical presentation, between the individual's arrival and the provision of an appropriate medical screening examination?*

⦿ YES          ◯ NO

Please explain your clinical rationale:

Patient with STEMI refused at Baptist, sent to University of Kentucky for cardiac cath.

**EXHIBIT 138**

*(Rev. 134, Issued: 03-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

### EMTALA Physician Review Worksheet

<u>EMERGENCY MEDICAL CONDITION</u>

**2. Did this individual have an EMERGENCY MEDICAL CONDITION as defined by Part (1) of the definition noted above?** (Individual conditions meeting the definition in Part 2 above are addressed in subsequent questions.)

◉ YES        ◯ NO

Please explain your clinical rationale:

Patient with STEMI.

**3. Was this individual a pregnant woman who was having contractions?**

◯ YES        ◉ NO

Please explain your clinical rationale:

*(If "NO" is checked, skip questions #3a & #3b and proceed to #4)*

**EXHIBIT 138**

(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)

**EMTALA Physician Review Worksheet**

3a.  If "YES" is checked in #3 and the pregnant woman was transferred/discharged, at the time of transfer/discharge, could it be determined with reasonable medical certainty that there would be adequate time to effect a safe transfer to another hospital before delivery?

○ YES          ○ NO          ⦿ N/A

Please explain your clinical rationale:

3b.  If "YES" is checked in #3 and the pregnant woman with contractions was transferred/discharged, at the time of transfer/discharge could it be determined, with reasonable medical certainty, that the transfer/discharge would not pose a threat to the health or safety of the pregnant woman or the unborn child?

○ YES          ○ NO          ⦿ N/A

Please explain your clinical rationale:

**EXHIBIT 138**

*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15  Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

<u>STABILIZING TREATMENT</u>

**Note to Physician Reviewer:** Terms relating to "stabilization" are specifically defined under EMTALA. These terms DO NOT REFLECT the common usage in the medical profession, but instead focus on the medical risks associated with a particular transfer/discharge. Thus, when answering questions related to "stability" for EMTALA, please be very careful to refer to the definition provided below. In addition, the clinical outcome of an individual's condition is not a proper basis for determining whether a person transferred was stabilized. However, the individual's outcome may be a "red flag" indicating that a more thorough evaluation of the individual's condition at the time of transfer was needed.

*Under EMTALA, to stabilize means, with respect to part 1 of the definition of an "emergency medical condition,  to provide such medical treatment of the condition necessary to assure,* within reasonable medical probability, that no material deterioration of the condition is likely <u>to result from or occur during the transfer/discharge</u> of the individual from the hospital, or in the case of *part 2 of the definition, concerning* a pregnant woman having contractions, that the pregnant woman has delivered the child and placenta.

**4.** If *the individual had* an **emergency medical condition (EMC)**, was the EMC "**stabilized**" *(as defined above) prior to the time of the individual's transfer or discharge?*

◯ YES          ◯ NO          ⦿ N/A

Please explain your clinical rationale:

Patient not transferred or discharged. Patient not seen at Baptist ER.

## EXHIBIT 138
*(Rev. 134. Issued: 02-20-15. Effective: 02-13-15. Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

*Note to Physician Reviewer: A hospital must provide appropriate stabilizing treatment services for an emergency medical condition within the full capabilities of its staff and facilities, including access to specialists who are on call.*

**5a. Is there any evidence that the hospital was equipped with such staff, services, or equipment necessary to "stabilize" the individual's emergency medical condition??**

(●) YES        ( ) NO        ( ) N/A

Please explain your clinical rationale:

Baptist had ED staff and cardiology.

**5b. If the hospital had the capability to stabilize the individual and the individual's** *emergency medical condition* **was not stabilized prior to transfer/discharge, is there any information available to indicate WHY the emergency medical condition was NOT "stabilized" prior to discharge/transfer?**

( ) YES        ( ) NO        (●) N/A

*If yes, does this rationale have a sound clinical basis?:*

Patient not transferred or discharged.

PAGE 8.

**EXHIBIT 138**
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

*5c. Is there any evidence that there was an inappropriately long delay, based on the individual's clinical presentation, between the individual's arrival and the provision of appropriate stabilizing treatment for the individual's emergency medical condition?*

( ● ) *YES*        ( ) *NO*        ( ) *N/A*

*Please explain your clinical rationale:*

Patient not seen at Baptist; EMS told to go to another hospital while on ramp with STEMI patient.

*Note to Physician Reviewer: A hospital is required to inform the individual or the individual's legal representative of the risks and benefits of further examination and treatment. If the individual representative then refuses to consent to further examination or treatment, the medical record must contain a description of the examination or treatment, or both, which was refused as well as documentation of the individual representative having been informed of the risks, risks benefits.*

*6. Does the medical record indicate the individual refused to consent to necessary stabilizing treatment?*

( ) *YES*        ( ) *NO*

*(If "NO" is checked, skip question #6a and proceed to #7)*

*6a. If "YES" is checked and if the medical record contains a description of the communication to the individual/legal representative of the risks and benefits and benefits of further examination or treatment, was this communication appropriate, based on the information available to the hospital at the time of the refusal?*

( ) *YES*        ( ) *NO*        ( ● ) *N/A*

*Please explain:*

## EXHIBIT 138
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

### EMTALA Physician Review Worksheet

#### APPROPRIATE TRANSFERS

*7a.* *If your response to question 5a was "NO" finding that the hospital was not capable of stabilizing the individual's emergency medical condition,* **what were the required specialized capabilities that the hospital lacked?**

*7b.* **If the individual was transferred to another hospital, did the** *sending* **hospital provide further examination and stabilizing treatment, within its** *capacity* **(including ancillary services routinely available to it) to minimize the risks of transfer to the individual's health and, where relevant, the health of the unborn child?**

⭕ YES        ⭕ NO        ⦿ N/A

Please explain your clinical rationale:

**EXHIBIT 138**
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

**8.  If the individual was transferred to another hospital, to minimize the risks of transfer, *were* qualified personnel and transportation equipment, including *medically appropriate* life support measures, *used to effect (i.e. accomplish) the transfer?***

◯ YES          ◯ NO          ⦿ N/A

Please explain your clinical rationale:

**9a.  *If this individual was transferred to another hospital for stabilizing treatment of an unstabilized emergency medical condition, do you find that, considering the individual's clinical condition at the time of transfer and any other pertinent information available at that point in time, the medical benefits reasonably expected from appropriate medical treatment at the other hospital outweighed the increased risk to the individual (or woman in labor or unborn child) from being transferred?***

◯ YES          ◯ NO          ⦿ N/A

Please explain your clinical rationale:

**EXHIBIT 138**

*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

## EMTALA Physician Review Worksheet

*Note to physician reviewer:  The physician certification required for an appropriate transfer must be in writing, must contain a summary of the specific risks and benefits pertaining to this individual's clinical situation, and must be placed in the individual's medical record.*

**9b.**  *Do you find that the summary of risks and benefits of transfer contained in the physician certification was appropriate, based on the information available to the hospital at the time of transfer about the individual's condition?*

◯ YES          ◯ NO          ◉ N/A*

Please explain:

[blank box]

*"Check N/A not only if this case does not involve a transfer, but also if there was no physician certification in the medical record.*

**9c.**  *If the transfer was at the request of the individual or the individual's legal representative, rather than based on a physician's certification of the benefits outweighing the risks, and the medical record documents this, do you find that the likely risks of the transfer were identified for the individual/representative?*

◯ YES          ◯ NO

Please explain your clinical rationale:

N/A

PAGE 12.

**EXHIBIT 138**
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

**EMTALA Physician Review Worksheet**

*10.* **Does the documentation suggest that the transferring hospital sent to the receiving hospital all available and pertinent medical documentation related to the emergency medical condition?**

◯ YES          ◯ NO          ◉ N/A

Please explain:

RESPONSIBILITY OF HOSPITALS WITH SPECIALIZED DIAGNOSTIC OR TREATMENT
CAPABILITIES OR FACILITIES

**Note to Physician Reviewer:** While "specialized capabilities or facilities" include such facilities as burn units, shock-trauma units, neonatal intensive care units or regional referral centers, it also includes *others more clinical characteristics.* Most simply, if an individual with an emergency medical condition needs services to stabilize that condition that cannot be made available in a clinically appropriate timeframe at the hospital where the individual presented, but which are available at another hospital, the hospital with these capabilities/services must accept a request for transfer, if it has the capacity to provide the needed *stabilizing treatment.*

*11.* **Is there any evidence that a Medicare-participating hospital that refused a transfer request has specialized capabilities or services (not available at the *sending* hospital) that the individual required?**

◯ YES          ◯ NO          ◉ N/A

Please explain:

*(If "NO" or "N/A" is checked, skip question #11a and go to #12.)*

**EXHIBIT 138**
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

**EMTALA Physician Review Worksheet**

*11.a   If "YES" is checked in #11, is there evidence that the hospital with specialized capabilities or services lacked the capacity to treat the individual requesting stabilizing treatment, at the time of the request?*

Please explain:

QUALITY

*12.*   Do you have any specific concerns about the quality of care rendered to the individual that have not already been addressed fully above?

◯ YES          ⦿ NO

*If yes,* please explain your clinical rationale:

PAGE 14.

## EXHIBIT 138
*(Rev. 134, Issued: 02-20-15, Effective: 02-13-15, Implementation: 02-13-15)*

### EMTALA Physician Review Worksheet

<u>SUMMARY OF FINDINGS:</u>

13.  Please summarize the key facts of the case below and any concerns or clarifications to your answers above with regard to this case.   Remember, do <u>not</u> state an opinion regarding whether EMTALA was violated.

Patient brought to Baptist Hospital ER with STEMI. EMS unloaded patient, then was told to go elsewhere as hospital was on divert. Cardiology was available at Baptist. Patient was reloaded into ambulance and taken to University of Kentucky ER where patient had cardiac catheterization. Patient was NOT seen and did not have medical screening examination at Baptist ER despite arrival via EMS with STEMI.