UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM H. WILLIAMS                                                                PLAINTIFF

v.                                                 CIVIL ACTION NO. 3:16-CV-00236-CRS

BAPTIST HEALTHCARE SYSTEM,
INC. d/b/a BAPTIST HEALTH
LEXINGTON                                                            DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on defendant Baptist Health Lexington's ("BHL") objection to Magistrate Judge Dave Whalin's order denying BHL's motion for a protective order. ECF No. 61. For the reasons stated below, this objection will be overruled.

        I.        Case Background

This case arises from an incident that occurred at BHL on April 4, 2015. On this occasion, BHL did not have any cardiothoracic (CT) surgery physicians available to provide on-call and emergency services. ECF No. 61, p. 1. As a result, BHL instituted a policy to divert CT patients to another hospital. *Id.* Although this policy was communicated to Emergency Department staff, a BHL nurse received a call from an in-bound ambulance transporting a cardiac catheterization patient and mistakenly told the ambulance to bring the patient to BHL. *Id.* Upon realizing this mistake, the nurse attempted to contact the ambulance to divert it. *Id.* at 1-2. However, the ambulance arrived before the message was communicated. *Id.* at 2. The nurse met the ambulance outside and directed the EMTs to go to another hospital. *Id.*

The patient, plaintiff William H. Williams ("Williams"), was then taken to another hospital where he underwent a five-vessel coronary artery bypass. *Id.* On April 4, 2016, Williams filed suit against BHL, alleging violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), medical negligence, and negligence per se. Pl. Complaint, ECF No. 1.

On March 30, 2017, Williams and BHL entered into a private protective agreement, agreeing that BHL would turn over documents it considered to be confidential and Williams would keep those documents confidential unless and until he gave notice of his intent to challenge this categorization. ECF No. 61, p. 2. In the event that the confidentiality of one or more documents was challenged, BHL would have thirty days to file a motion for a protective order with the court. *Id.*

Pursuant to the private protective agreement, BHL produced various documents it claimed were confidential. *Id.* Williams subsequently challenged the confidentiality of twenty-five of these documents. *Id.* On May 23, 2017, BHL filed a motion for a protective order with the court. ECF No. 49. Then, on August 10, 2017, Judge Whalin requested *in camera* review of the documents in question. ECF No. 58. Judge Whalin subsequently entered an order denying BHL's motion for a protective order. ECF No. 60.

BHL now objects to Judge Whalin's denial of a protective order.

II. Legal Standard

Under Federal Rule of Civil Procedure 72(a), a party may file an objection to a magistrate judge's order within fourteen days of being served with a copy. Upon review, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." *Id.* Clear error exists "when the reviewing court is left with the definite and firm conviction that a

mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 810 (6th Cir. 2015) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

BHL objects to Judge Whalin's denial of a protective order for its twenty-five documents. Under Federal Rule of Civil Procedure 26(c)(1)(G), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense , including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . ." Good cause exists when the party moving for the protective order "articulate[s] specific facts showing 'clearly defined and serious injury' resulting from the discovery sought . . ." *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).

Factors to consider in determining whether a specific item is a trade secret or confidential information include:

> (1) the extent to which the information is known outside of [the] business;
> (2) the extent to which it is known by employees and others involved in [the] business;
> (3) the extent of measures taken . . . to guard the secrecy of the information;
> (4) the value of the information to [the business] and to [its] competitors;
> (5) the amount of effort or money expended . . . in developing the information;
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
> *Nash-Finch Company and Super Food Services, Inc. v. Casey's Foods, Inc.*, 2016 WL 737903, *2 (E.D. Ky. Feb. 23, 2016) (citing *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio Jan. 17, 2014)).

Routine business materials that do not provide a financial or business advantage do not fall within these confines. *Mitchell v. Home Depot, USA*, 2012 WL 2192279 (W.D. Ky. June 14, 2012).

Motions for protective orders are generally disfavored unless the moving party can show a substantial justification for withholding the information from the public. *See Proctor & Gamble Co. v. Banker's Trust Company*, 78 F.3d 219, 227 (6th Cir. 1996) ("While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and is circumscribed by a long-established tradition which values public access to court proceedings."); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying public access to the proceedings.").

III. Discussion

BHL objects to Judge Whalin's denial of a protective order for the twenty-five documents in question. These documents include BHL's policies and procedures, nurse training documents, job descriptions, physician schedules and employee lists. BHL argues that it has provided sufficient evidence that a 'clearly defined and serious injury' will result if these documents are disclosed to the public. Moreover, BHL contends that Judge Whalin did not accurately apply relevant case law in reaching his conclusion. These arguments will be discussed in further detail below.

A. 'Clearly Defined and Serious Injury'

BHL argues that Judge Whalin erred in concluding that it did not provide specific facts to demonstrate a 'clearly defined and serious injury.' BHL asserts that the affidavit of Penny Cooper, the Clinical Director of Risk Management at BHL, "thoroughly details how the public dissemination of the documents at issue will cause BHL specific harm." ECF No. 61, p. 6. BHL points to Cooper's statements explaining how the documents are "interconnected and work together to create a unique, effective, and efficient way for BHL to provide high quality health

care services to patients." *Id.* at 9. Moreover, BHL highlights Cooper's explanation of the harm that will occur if these documents do not remain confidential. Cooper states:

> The core requirement for opening a new hospital is establishing detailed and effective policies and procedures for that hospital's operation. BHL's unique and effective policies and procedures would be valuable to a new hospital, as well as to a hospital that is already operating – particularly if that hospital is experiencing any deficiencies from regulators, lower customer volume or patient satisfaction, quality of care concerns, or operating profit issues. Even hospitals that are operating well would benefit from BHL's policies and procedures to fine-tune their own.
>
> If not protected from disclosure, competitors could duplicate these policies and procedures to improve their own hospitals' operation, reputation and ability to attract customers – all to the detriment of and causing competitive harm to BHL. ECF No. 49-5, p. 3-4.

Judge Whalin did not err in finding that BHL failed to demonstrate a 'clearly defined and serious injury.' Although Cooper's affidavit provides an explanation of harm that could occur, this type of harm is too speculative to constitute a 'clearly defined and serious injury.' This court has previously held that providing a potential advantage to competitors alone will not satisfy 'good cause' for a protective order. *See Borum v. Smith*, 2017 WL 2588433, *3 (W.D. Ky. June 14, 2017) ("[Defendant] has done nothing more than [provide] a general recitation that . . . the disclosure of the documents would provide competitors with an advantage."); *Mitchell v. Home Depot U.S.A.*, 2012 WL 2192279 at *4 (W.D. Ky. June 14, 2012) (stating that the defendant "has made a generalized claim that disclosure of its policies and procedures will result in harm if the public obtains access to them. That harm could apply to all businesses that develop policies and procedures."). While Cooper describes BHL's policies and procedures as "unique and effective," she fails to state *how* these policies and procedures differ from those of other healthcare providers. In fact, there is nothing to suggest that BHL's policies and procedures, training manuals, or job descriptions are anything more than a derivative of standard materials in the

5

industry.[1] Accordingly, Judge Whalin did not err in concluding that BHL did not demonstrate a 'clearly defined and serious injury.'

    B. Analysis of Relevant Case Law

Additionally, BHL contends that Judge Whalin failed to correctly apply relevant case law. BHL argues that Judge Whalin incorrectly concluded that this case is analogous to *Borum v. Smith*, 2017 WL 2588433 (W.D. Ky. June 14, 2017) and *Motto v. Correctional Medical Services*, 2009 WL 347432 (S.D. W. Va. Feb. 9, 2009). Moreover, BHL argues that Judge Whalin failed to recognize the similarities between this case and *Ingalsbe v. Henderson Health Facilities, L.P.*, 2017 WL 1147492 (W.D. Ky. Mar. 27, 2017).

    i. Comparison to *Borum* and *Motto*

Judge Whalin did not err in analogizing this case to *Borum* and *Motto*. In *Borum*, the court held that the defendant hospital's policies and procedures, medical bylaws, and codes of conduct were not entitled to a protective order. The court stated that the hospital "failed to identify anything 'unique or distinctive' about its policies and procedures that are different from those employed by other competitors in the healthcare market." *Id.* at *4. Further, the court noted that "a conclusory statement that disclosure of the documents would provide competitors with an advantage" was insufficient to demonstrate 'good cause,' as such a generalized showing would undermine "the general principle of open access that underlies the judicial system." *Id.* at *4-*5.

The same flaws exist in the present case. Penny Cooper's affidavit, although more detailed than the affidavit presented in *Borum*, fails to demonstrate that the documents in question constitute 'confidential information' under Rule 26(c)(1)(G). Cooper generally states

---

[1] BHL contends that it cannot compare its policies and procedures to those of other hospitals because these materials are generally kept confidential. While this may be true, the court finds that BHL has still failed to demonstrate that the documents in question have such value that their disclosure would cause BHL 'clearly defined and serious injury.'

that BHL's "policies and procedures are unique to [the hospital's] organization" and are a "blueprint for operating each department within the hospital." ECF No. 49-5, p. 4. She further states that the training materials and job descriptions are "interconnected with BHL's policies and procedures." ECF No. 49-5, p. 5. However, such statements could be made about any business's policies and procedures. Cooper's general statements are insufficient to meet BHL's burden of demonstrating that these documents are confidential in nature.

Moreover, BHL's claim of harm is nearly identical to that alleged in *Borum*. Cooper's affidavit states that "[t]he core requirement for opening a new hospital is establishing detailed and effective policies and procedures," and that new or existing hospitals could use BHL's documents to improve their own performance. ECF No. 49-5, p. 3. As previously stated, this type of attenuated harm is insufficient to satisfy the requirement of good cause.

Turning to *Motto*, the court held that the defendant medical service provider's "policies and procedures concerning (1) hospital and specialty care, (2) continuity of care, (3) patient escort, (4) emergency services, and (5) transfer to inpatient psychiatric setting" were not entitled to a protective order." *Id.* at *1. The court found that "the documents did not contain the type of information contemplated by Rule 26(c) as trade secrets or confidential information," as they contained "industry-standard policies and procedures." *Id.*

Again, the present case contains a similar flaw. Nothing in Cooper's affidavit demonstrates how the documents in question are unique from standard policies and procedures in the medical profession. The burden is on the party moving for a protective order to demonstrate that the materials have substantial value to the business and its competitors. BHL has failed to meet this burden.

## ii. Distinguishing *Ingalsbe*

Additionally, Judge Whalin did not err in finding this case distinguishable from *Ingalsbe*. In *Ingalsbe*, the court held that a defendant hospital's "employee personal files; contracts with service providers; training and attendance records; company policies, procedures, and guidelines; compensation structures; cost reports; and . . . documentation regarding [a patient's] residency at the facility" *were* entitled to a protective order. *Id.* at *2. The court determined that public dissemination this information could lead to several adverse impacts, including: (1) providing the hospital's competitors with an advantage; (2) exposing the hospital to lawsuits from current and former employees; and (3) exposing the hospital to the risk of federal and/or state fines. *Id.*

BHL does not face the same risk of harm in the present case. The only injury that Cooper's affidavit identifies is that a competing hospital could potentially use BHL's documents to create or improve its own policies and procedures, thereby undercutting BHL's advantage in the market. A more specific and concrete harm, such as was shown in *Ingalsbe*, is needed to justify a protective order. Therefore, Judge Whalin did not err in his analysis of relevant case law.

## IV. Conclusion

For the foregoing reasons, BHL's objections to Judge Whalin's order denying a protective order will be overruled. An order will be entered in accordance with this memorandum.

February 20, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**