IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WILLIAM H. WILLIAMS,   )<br>    PLAINTIFF   )<br>)<br>v.   )<br>)<br>)<br>)<br>BAPTIST HEALTHCARE SYSTEM,   )<br>INC. d/b/a BAPTIST HEALTH   )<br>LEXINGTON   )<br>    DEFENDANT   )<br>)  | Case No. 3:16-00236-CHB-RK<br><br>JUDGE:  Claria Horn Boom<br>MAGISTRATE JUDGE: Regina Edwards<br><br>*ELECTRONICALLY FILED* |

**PLAINTIFF'S RESPONSE *IN OPPOSITION TO* DEFENDANT'S MOTION BASED ON REINSTATED PUNITIVE DAMAGES [R. at 212]**

Defendant improperly seeks to admit into evidence as an exhibit the EMTALA regulation and seeks to admit subsequent remedial measures which are inadmissible under the Federal Rules of Evidence. This Court should deny Defendant's Motion for the following reasons:

1. The Court instructs the jury on the law and submitting regulations to the jury as exhibits will cause needless confusion.

2. The common law jury instruction for punitive damages applies and does not include consideration of subsequent remedial measures.

3. Subsequent remedial measures are otherwise inadmissible.

Accordingly, Plaintiff respectfully asks this Court to bar admission of the EMTALA regulation as an exhibit and to maintain its current rulings barring subsequent remedial measures.

**I.      Regulations Are Not Evidence and The Court Instructs the Jury on the Law.**

The texts of statutes and regulations are not "evidence" and submitting the EMTALA regulation to the jury will needlessly cause confusion and could lead to improper inferences from

1

the regulation's text, particularly where the Court will instruct the jury about what the law is. Courts in the Sixth Circuit recognize that the text of a statute being sent back to the jury may cause improper confusion, with the Eastern District of Michigan noting as follows:

> The judge instructs the jury as to the legal conclusions (i.e. guilty or not guilty) required by their findings of fact. These are basic principles of trial procedure. **To admit a statute into evidence as an exhibit in this case would thrust the jury into a quasi-judicial role and confuse them as to their fact-finding function**

*United States v. Griffith*, 2015 U.S. Dist. LEXIS 12893, at *4-5 (E.D. Mich. Feb. 4, 2015) (emphasis added).

The text of EMTALA, 42 USC § 1395dd, is lengthy and includes numerous complicated terms and extraneous provisions not relevant to the jury's determination of liability and damages in this case. This includes the following items which are irrelevant:

- Section (b)(2), "Refusal to Consent to Treatment." Not at issue. There was no offer of treatment for Mr. Williams to consent to or reject, and there was no refusal.

- Section (b)(3), "Refusal to Consent to Transfer." Not at issue. There was no transfer arranged for Mr. Williams to consent to or reject, and there was no refusal.

- Section (d)(1), "Civil Monetary Penalties." Not at issue. This section controls what penalties the government may assess a hospital.

- Section (d)(2), "Civil Enforcement." Not at issue. This section permits persons like Mr. Williams to file claims for their injuries; however, this section has no bearing on the jury's determination of liability and damages.

- Section (d)(3), "Consultation with Quality Review Committees." Not at issue. This section requires a hospital to perform an incident review. It is not relevant to the jury's determination of liability and damages.

- Section (d)(4), "Notice Upon Closing and Investigation." Not at issue. This section requires the government to notify a hospital when an investigation is closed. It is not relevant to the jury's determination of liability and damages.

- Section (f), "Preemption." Not at issue. This section merely states that EMTALA does not preempt state and local hospital regulations and statutes.

- Section (g), "Nondiscrimination." Not at issue. This section requires hospitals with advanced practices to accept transfers from other, less-well equipped hospital facilities. It is not relevant to the jury's determination of liability and damages.

- Section (h), "No Delay in Examination or Treatment." Not at issue. This section bars providers from denying or delaying emergency care to determine insurance eligibility. It is not relevant to the jury's determination of liability and damages.

- Section (i), "Whistleblower Protections." Not at issue. This section bars taking adverse action against employees who *do* follow EMTALA by providing care or who report an EMTALA violation. It is not relevant to the jury's determination of liability and damages.

These sections, which take up over half of the EMTALA regulation, are irrelevant to the jury's determination of this action. Moreover, even those sections which might be relevant, including sections discussing a "medical screening exam," "stabilizing treatment," or an "appropriate transfer" include extraneous language that may confuse the jury and lead the jury to draw its own legal—as opposed to factual—conclusions. Sixth Circuit case law is clear that "it is within the sole province of the court to determine the applicable law and to instruct the jury as to that law." *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999); quoting *Polec v. Nw. Airlines (In re Air Crash Disaster),* 86 F.3d 498, 523 (6th Cir. 1996).

Rather than have the jury peruse through the text of a lengthy regulation for it to decide what it means, the Court should advise the jury on the law. The parties have each submitted jury instructions and, while there remain some disagreements, the parties have tendered nearly identical language for Instruction No. 1, concerning the EMTALA violation.[1] Instead of sending back the text of the law, the Court should tell the jury what the law is through the jury instructions.

---

[1] *See* R. at 214, Status Update on Jury Instructions.

**II.     Subsequent Remedial Measures Taken by Defendant After the Fact Are Not Admissible.**

Actions taken by a defendant to remediate flaws that led to a plaintiff's injury are excluded under Federal Rule of Evidence 407. Defendant seeks to admit into evidence multiple EMTALA trainings it conducted following Mr. Williams' improper diversion hoping this will impact the amount of punitive damages assessed against it. However, punitive damages are meant to punish the grossly negligent misconduct that led to an injury, and the punitive damages instruction in this case should not ask the jury to consider subsequent remedial measures. With no other proper purpose for the admission of remedial measures, they should not be admitted.

**A.  The common law standard for recovering punitive damages should apply, not the statutory standard.**

Kentucky's common law standard for an award of punitive damages—whether a defendant's conduct was grossly negligent and in reckless disregard for the life and safety of a plaintiff—applies to this action.[2] Defendant incorrectly insists the statutory standard for punitive damages should apply, citing KRS 411.184 and KRS 411.186.[3] The Kentucky Supreme Court, *in an EMTALA action*, observed as follows:

> The availability of punitive damages for an EMTALA violation is, therefore, a matter of state tort law. **Kentucky law provides *two different avenues* for the recovery of punitive damages: one statutory and one under common law**. KRS 411.184(2) provides for the recovery of punitive damages "only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." However, in *Williams v. Wilson*, 972 S.W.2d 260, (Ky. 1998), we held that punitive damages may also be awarded under the common law standard of "gross negligence." Gross negligence means a "wanton or reckless disregard for the lives, safety, or property of others." *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 59 (Ky. 2013). **Thus, punitive damages may be awarded when the evidence satisfies either the statutory standard of KRS 411.184(2) or the common law standard of gross negligence**.

---

[2] NOTE: Plaintiff has tendered amended instructions using the common law language outlined in *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016). *See* R. at 220.
[3] *See* Defendant's Brief, R. at 212, p. 2.

*Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016)(emphasis added).

While the *Thomas* court recognized that a plaintiff may recover punitive damages under either the common law "gross negligence" standard or the statutory "oppression, fraud, or malice" standard, the Kentucky Supreme Court has also made clear that each standard is markedly different, holding as follows:

> Appellant asserts that "the Court will find no 'definitive statement,' 'point of recognition' or 'well-established' rule regarding liability for punitive damages at common law." We disagree. As shown by the decisions discussed hereinabove, the well-established common law standard for awarding punitive damages was gross negligence. While the concept was not expressed in the same language in every opinion rendered prior to adoption of our Constitution, and while the language has not remained perfectly constant in this century, there is no doubt that unintentional conduct amounting to gross negligence, as that concept is well defined in *Horton*, was sufficient to authorize recovery of punitive damages. As the new statute requires proof of a subjective awareness that harm will result, it amounts to a vastly elevated standard for the recovery of punitive damages and a clear departure from the common law.
>
> […]
>
> Appellant argues that "'negligence so gross as to raise a presumption of malice' is qualitatively no different than a subjective awareness that such conduct will result in human death or bodily injury." With this we vehemently disagree. Gross negligence, however it may be qualified, is conduct lacking intent or actual knowledge of the result.

*Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998)

The upshot of the Kentucky Supreme Court's rulings in *Thomas* and *Williams* is that either one or both the common law standard and statutory standard may apply in different cases, depending on the facts. Here, only the common law "gross negligence" standard applies. Like the *Williams v. Wilson* court observed, the statutory requirement for "subjective awareness that harm will result" may not be present in all actions, but the conduct still may have been in "reckless disregard for the life and safety of other persons," *i.e.* gross negligence. *Id.*, 263-264. Here, there is no evidence Baptist Healthcare *intended* to harm Mr. Williams when it began the reckless series

5

of actions and inactions that led to his diversion. This is not a case of "oppression, fraud, or malice;" it is a case of "gross negligence" and the jury instructions should reflect the common law standard for punitive damages.

**B. The common law standard for recovering punitive damages does not include an instruction on subsequent remedial measures.**

The common law standard—and not the statutory standard—for awarding punitive damages applies in this action and the considerations for awarding punitive damages in KRS 411.184 and KRS 411.186 should not apply. Plaintiff initially filed jury instructions (R. at 164 and 214) that incorrectly included the terms from the statutory definition for punitive damages. Plaintiff has since filed amended instructions utilizing solely the requirements for awarding punitive damages at common law.[4] This includes the following defined terms and instructions for the jury, as set forth from Kentucky's common law and which are taken directly from the authoritative Palmore's *Kentucky Instructions to Juries,* § 39.15 (Punitive Damages):

- An instruction stating punitive damages may be awarded if there is clear and convincing evidence defendant acted with a "reckless disregard for the lives or safety of others," as stated in *Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56, 59 (Ky. 2013).

- A statement listing factors the jury may consider when determining the reprehensibility of Defendant's conduct, as set forth by the Kentucky Supreme Court in *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 879 (Ky. 2016) and by the United States Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, (2003).

- A statement that punitive damages are damages awarded against Defendant for the purpose of punishing Defendant for its misconduct in this case and deterring it and others from engaging in similar conduct in the future. *See Williams*, 972 S.W.2d at 273.

- A statement that whether punitive damages are awarded, in addition to compensatory damages awarded, is a matter exclusively within the jury's discretion and should be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in the amount, because of any sympathy, or bias, or prejudice with respect to any party to the case. *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 167 (Ky. 2004)

---

[4] *See* R. at 220, Plaintiff's Amended Jury Instructions.

- An instruction concerning Baptist Healthcare's authorization and ratification concerning the conduct of its employees and agents. *See Univ. Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 794 (Ky. 2011).

The common law instructions to award punitive damages are sufficient and it is not necessary to include instructions based on the inapplicable statutory punitive damages language, including language that the jury consider "any actions by the defendant to remedy the misconduct once it became known to the defendant." KRS 411.186 (2)(e).

Tellingly, Plaintiff's tendered instructions match both Palmore's model instructions for Kentucky juries and the factors laid out by the Supreme Court of the United States for punitive damages cases in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, (2003), which states as follows:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.*

This Court is not required to use the statutory language, particularly because Kentucky's appellate courts hold the statutory language for punitive damages unconstitutionally restricts recovery for "gross negligence" and because the definitive template for jury instructions, Palmore's *Kentucky Instructions to Juries*, borrows directly from the holding of Supreme Court of the United States in *State Farm v. Campbell, supra*.[5]

---

[5] Attachment 1, Sheila B. Scheuerman, & Anthony J. Franze, *Instructing Juries on Punitive Damages: Due Process Revisited After Philip Morris v. Williams*, 10 U. Pa. J. Const. L. 1147(2008), p. 1182 (fn. 187) (the full article is available online at
https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=1223&context=jcl

The instructions proposed by Plaintiff are not only similar to the model instructions in Palmore and the *State Farm v. Campbell* case, they are also similar to the Model Civil Jury Instructions for the Ninth Circuit[6] and the Fifth Circuit,[7] which do not include language concerning remedial measures. A very recent punitive damages jury instruction in an Eastern District of Kentucky jailhouse civil rights case, tried by Judge Van Tatenhove, also did not include the statutory language concerning subsequent remedial measures and instead used the common law language and the language from *State Farm v. Campbell*.[8]

The numerous jury instructions from Kentucky and elsewhere which do not use subsequent remedial measures as evidence in punitive damages cases conforms with the holdings from several federal appellate courts across the country, that "evidence of post-occurrence action by the defendant is not relevant in determining punitive damages." *Swinton v. Potomac Corp.*, 270 F.3d 794, 813 (9th Cir. 2001); *citing O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438 (10th Cir. 1987).

In short, the only basis for allowing Defendant to put on evidence of inadmissible remedial measures is a jury instruction that is immaterial in this case and should not be used.

C. **Absent any proper purpose for admission, all subsequent remedial measures should be barred from admission under FRE 407, FRE 402, and FRE 403.**

The federal rules bar admission of subsequent remedial measures to prove liability and the standard punitive damages jury instructions used for "gross negligence" in Kentucky do not require the jury to weigh post-incident conduct. Defendants may suggest FRE 407 only bars presentation

---

[6] Attachment 2, Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), § 5.5 (Punitive Damages), last updated September 2021, full version available online at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

[7] Attachment 3, Pattern Jury Instructions for the Fifth Circuit (2014), § 15.7 (Punitive Damages), last updated October 2016, available online at https://www.lb5.uscourts.gov/juryinstructions/fifth/2014civil.pdf.

[8] Attachment 4, Jury Instructions. *Reece v. Carey*, 3:16-cv-00069-GFVT-EBA (E.D.K.Y.), R. at 283, p. 21 (July 12, 2021).

of remedial measures to prove *liability* and, because Defendant is not using subsequent remedial measures to prove liability FRE 407 is inapplicable., However, as FRE 407's Notes of Advisory Committee on 1997 Amendments state, "evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence."

Here, alleged staff retraining taking place after Mr. Williams improper diversion are not relevant to this case. Whether Baptist Healthcare was negligent and acted in a reckless disregard to Mr. Williams (and others) well-being in the events leading up to his diversion is based on the evidence from that time periods, not the months after CMS investigated and threatened to sanction Baptist Healthcare. Accordingly, they are irrelevant and admissible under FRE 402 and 403.

### III. CONCLUSION

For the foregoing reasons, Plaintiff objects and respectfully requests this Court deny Defendant's motion to admit the EMTALA statute and Defendant's subsequent remedial measures.

Respectfully submitted,

/s/ Hans G. Poppe
Hans G. Poppe
Kirk A. Laughlin
**The Poppe Law Firm**
8700 Westport Road, Suite 201
Louisville, Kentucky 40242
(502) 895-3400
(502) 895-3420 (fax)
Hans@PoppeLawFirm.com
Scarlette@PoppeLawFirm.com
Kirk@PoppeLawFirm.com
Kathleen@PoppeLawFirm.com
***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on November 11, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of this electronic filing to:

Clay M. Stevens
Kristen Fowler
Napier Gault Schupbach & Stevens, PLC
730 W. Main Street, Suite 400
Louisville, KY 40202
P: (502) 855-3805
F: (502) 855-3838
cstevens@napiergaultlaw.com
kfowler@napiergaultlaw.com

                                            /s/ Hans G. Poppe
                                            Hans G. Poppe